1    WO

6              IN THE UNITED STATES DISTRICT COURT

7                 FOR THE DISTRICT OF ARIZONA

9    James Terry,                          No. CV-15-00107-TUC-CKJ (EJM)

10              Petitioner,                **REPORT AND**
                                           **RECOMMENDATION**
11   v.

12   Unknown Shartle,

13              Respondent.

16        Pending before the Court is a petition for a writ of habeas corpus filed pursuant to

17   28 U.S.C. § 2241 by James Terry ("Terry" or "Petitioner"). (Doc. 1). Terry alleges that a

18   fairly recent Supreme Court case[1] materially changed the substantive law for an element

19   of the offense that he was convicted of, and that this change in law applies retroactively

20   to cases on collateral review. He alleges that this Court has jurisdiction over the § 2241

21   petition because he has satisfied the stringent requirements of the "escape hatch" or

22   "savings clause" of 28 U.S.C. § 2255(e); specifically, the material and retroactive change

23   in the law demonstrates that he is actually innocent of the offense of conviction, and he

24   has not had an unobstructed procedural shot (*i.e.*, on direct appeal or in his first § 2255

25   motion) at presenting this actual innocence claim.

26        Respondent argues that this Court does not have jurisdiction over the § 2241

27   petition because Terry has not met the requirements of the escape hatch for the following

28   _____

          [1] *Burrage v. United States*, 134 S. Ct. 881 (2014)

reasons. (Doc. 11). First, Respondent contends that *Burrage* only dealt with a sentencing enhancement and does not apply retroactively to cases on collateral review.[2] Second, Respondent argues that Terry had an unobstructed procedural shot to present this claim on direct appeal and in his § 2255 motion. Third, Respondent argues that Terry cannot demonstrate that he is actually innocent because he pled guilty to the requisite elements of the offense as modified by this recent Supreme Court case.

As an initial matter, the Court notes that the proper respondent in an action for habeas corpus is the Petitioner's custodian. *See* 28 U.S.C. § 2242; *Rumsfeld v. Padilla*, 542 U.S. 426, 435–36 (2004). Petitioner named the respondent in this action as "Mr. Shartle." (Doc. 1). The Court will substitute the Warden of USP—Tucson, J. T. Shartle, as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure, this matter was referred to Magistrate Judge Markovich for a Report and Recommendation. For the reasons discussed below, it is recommended that the District Court conclude that Terry's allegations satisfy the requirements of the escape hatch and, as such, that the District Court has jurisdiction to review the merits of the instant petition. It is further recommended that an evidentiary hearing on Petitioner's actual innocence claim be scheduled and that Terry be appointed counsel for that hearing.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Proceedings in the Middle District of Florida

On July 22, 1997, a federal grand jury in the Middle District of Florida returned a one count indictment charging Terry with distribution of heroin in violation of 21 U.S.C. § 841(a). The indictment further alleged that "as a result of the use of the substance, death resulted to Justin Hayden and George Bakun." *See United States v. Terry*, Case No. 8:97-Cr-T-273-23TBM (M.D. Fla.) ("Cr. Doc.")[3] at Doc. 10. This "death results" enhancement

---

[2] In the Supplemental Brief, Respondent concedes that *Burrage* is retroactive on collateral review, but still argues that *Burrage* does not apply to the instant case because Petitioner admitted the facts constituting but-for causation at his plea hearing. (Doc. 40).

[3] Citations to "Cr. Doc." Refer to the docket in Terry's underlying criminal case.

triggered a 20-year mandatory minimum penalty and increased the statutory maximum penalty from 20 years imprisonment to life imprisonment. *See* 21 U.S.C. § 841(b)(1)(C).

On October 28, 1997, Terry pled guilty to the indictment pursuant to a plea agreement. (Doc. 11-2 Ex. 1) At the guilty plea hearing, Terry agreed to the following facts: "On March 14, 1997, in Hillsborough County, Florida, the defendant delivered heroin to [Demian Gordon] who in turn delivered the heroin to Justin Hayden and George [Bakun]. As a result of their use of that heroin, Justin Hayden and George [Bakun] died." (Doc. 11-2 Ex. 1 at 27). The Magistrate Judge made further inquiry of Terry:

> THE COURT: Mr. Terry, did you deliver the heroin to this Gordon individual?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And you're aware of the fact that Mr. Justin -- excuse me, Mr. Hayden and Mr. Barkman [Bakun] passed on as a result of using the heroin?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: You're not required to make any additional statements with regards to the fact, but I always allow the defendants an opportunity to do so if they think it's important. Do you want to add anything to these facts?
>
> THE DEFENDANT: No, sir.

*Id.*

The United States Probation Office prepared a Presentence Investigation Report ("PSR"), which reported the Offense Conduct, and to which Terry did not object. (Doc. 15 Ex. 2). The PSR provided:

> 7. On March 14, 1997, [Demian] Gordon purchased two grams of heroin from Terry. Gordon then sold approximately ½ gram to George Bakun and 1 gram to Justin Hayden, both age 24, at his residence in Tampa, Florida. Throughout the day, in addition to the heroin, Bakun ingested other drugs, including Xanax, cocaine, and "acid"; and Hayden ingested Xanax. Some of the drug usage occurred at Gordon's residence. Later the same day, Bakun left Gordon's residence,

---

Citations to "E.D. Cal. Doc." refer to documents filed in Terry's § 2241 proceedings in the Eastern District of California. Citations to "Doc." refer to documents filed in the instant proceedings.

but Hayden remained. After Bakun and his girlfriend "partied" some more at the Days Inn at Fletcher Ave., and I-275, in Tampa, they went to sleep. When Bakun's girlfriend woke up the next morning, Bakun was dead. The official cause of death was "acute drug intoxication-heroin due to chronic drug use." In effect, Bakun died from an overdose of heroin.

8. After Hayden "partied" at Gordon's residence, he overdosed on the heroin. He was then taken to University Community Hospital of Carrollwood by a friend. After being treated for the overdose, they returned to Gordon's residence, where Hayden ingested more heroin. Terry was also at the residence, but left later. Sometime on March 15 Hayden also died of a heroin overdose.

*Id.* at ¶¶ 7–8.

On July 14, 1998, Terry failed to appear for sentencing and a bench warrant was issued. (Cr. Doc. 36, 37). After being apprehended in Mexico, Terry was eventually returned to the Middle District of Florida. (Cr. Doc. 41; Doc. 15 Ex. 2 at ¶ 13). On November 12, 1998, the District Court sentenced Terry to life imprisonment. (Cr. Doc. 48; Doc. 15 Ex. 3). At sentencing, Terry made no objection to the factual accuracy of the PSR. (Doc. 15 Ex. 3 at 4 [Tr. 6]).[4]

Terry appealed, alleging that (1) his guilty plea was involuntary, (2) the Court erred in allowing the Government to (a) withdraw its previously filed motion for downward departure, (b) object to a reduction for acceptance of responsibility and (c) oppose a sentence at the low end of the guidelines, and (3) the Court erred in denying acceptance of responsibility. (Cr. Doc. 51). On December 9, 1999, in an unpublished opinion, the Eleventh Circuit Court of Appeals affirmed Terry's conviction, finding that:

Upon review of the plea agreement, the presentence investigation report, the plea transcript, and the sentencing transcript, and upon consideration of the briefs of the parties, we find no cause for setting aside Terry's sentence. Terry's guilty plea was not induced by an improper Government promise; the district court did not abuse its discretion in denying Terry's request to withdraw his guilty plea; and Terry, in a valid plea agreement, waived his right to challenge on appeal the district court's denial of his request for an

---

[4] The District Court adopted these undisputed facts before imposing sentence. *See* Sentencing Transcript (Doc. 11-3 Ex. 3 at 23 [Tr. 84]).

- 4 -

offense level adjustment (and thus, perhaps, a sentence lower than the one he received).

(Doc. 11-3 Ex. 4 at 42–43).

On December 7, 2000, Terry filed a timely § 2255 motion in which he alleged, *inter alia*, that *Apprendi* required that the "death results" facts be proven to a fact finder beyond a reasonable doubt and that the "strict liability" nature of the statute was unconstitutional. (Doc. 1-1 at 18–43). Relying on *United States v. McIntosh*, 236 F.3d 968 (8th Cir. 2001), the District Court concluded that the § 841(b)(1)(C) sentencing enhancement "appl[ied] without regard to the principles of proximate cause," and was triggered "'whenever death or serious injury is a consequence of the victim's use of a controlled substance that has been manufactured or distributed by that defendant.'" (Doc. 1-1 at 15–16 (quoting *McIntosh*, 236 F.3d at 972)). The District Court reasoned that "in the instant case, Terry admitted during his plea colloquy all of the facts that were necessary to support a maximum statutory sentence of life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(C). Terry admitted that he had distributed heroin to Gordon, who, in turn, had delivered the heroin to Hayden and Bakun, who had died after using the heroin." (Doc. 1-1 at 9). The Court continued, finding that "[t]his admission was the equivalent of proof beyond a reasonable doubt and a finding by a jury that Terry's distribution of heroin caused a death." *Id.* For those reasons, the District Court denied the § 2255 petition.

Terry's request for a certificate of appealability was denied. (Cr. Doc. 100, 101, 106). On July 9, 2003, Terry filed another § 2255 motion which was also denied. (Cr. Doc. 114, 188). Terry thereafter filed approximately 60 motions or applications for relief and more than 15 appeals to the Eleventh Circuit, virtually all of which were denied. *See* Doc. 6 at 4. Among those filings was a § 2241 habeas corpus petition filed in the Eastern District of California on August 23, 2012. *Terry v. United States*, Case No. 1:12-cv-01388-MJS-HC (E.D. Cal.) at Doc. 1 ("E.D. Cal. Doc."). In that Petition, Terry made numerous claims, including that he was actually innocent—the same claim he makes

again in this pending § 2241 Petition. *See* E.D. Cal. Doc. 10, Order of Magistrate Judge referring Writ to District Judge ("He claims that he is innocent of the sentencing enhancement based on death of the victims since he did not directly provide them with heroin, but instead delivered it to Gordon who sold it to the victims."). On October 31, 2012, the District Court denied the Petition and a certificate of appealability. (E.D. Cal. Doc. 12). Terry filed a motion for reconsideration, which was denied by the District Court. (E.D. Cal. Doc. 13, 19). In denying the motion, the District Court noted:

> Here, Petitioner plead to the factual basis of the crime, and does not deny that he distributed drugs to Gordon who then distributed the drugs to two individuals who died from using the drugs. While Petitioner did not personally deliver the drugs to the end users, he has made an insufficient showing that he is actually innocent of delivering drugs that eventually caused the deaths of two people.

*Id.* The Ninth Circuit Court of Appeals denied a request for certificate of appealability. (E.D. Cal. Doc. 24, 35).

**B. The Instant Proceedings**

On March 18, 2015, Terry filed a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 in the District of Arizona. (Doc. 1). Petitioner's allegations essentially boil down to the argument that he is "actually innocent" of the 21 U.S.C. § 841(b)(1)(C) sentencing enhancement because, under the Supreme Court's holding in *Burrage v. United States*, 134 S. Ct. 881 (2014), it was never proven that the victims' use of heroin was the "but for" cause of their deaths. (Doc. 6 at 4). In *Burrage*, the Supreme Court held that where the drug distributed by the defendant was not an independently sufficient cause of death or serious bodily injury, the defendant could not be liable under the penalty enhancement of 21 U.S.C. § 841(b)(1)(C) unless the drug distributed by the defendant was the "but for" cause of death or injury. 134 S. Ct. at 892. The Court further noted that "[b]ecause the 'death results' enhancement increased the minimum and maximum sentences to which Burrage was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt." *Id.* at 887. Petitioner asserts that *Burrage* applies retroactively to his petition, and therefore requires reversal of his

conviction (based on his guilty plea) and his sentence.

Petitioner's case was assigned to United States District Court Judge Cindy K. Jorgenson. In an Order dated July 8, 2015, Judge Jorgenson directed Respondent to answer the petition within 20 days and referred the case to a Magistrate Judge for further proceedings and a Report and Recommendation. (Doc. 6).

Respondent filed his response to the petition (after seeking and obtaining an extension of his response time) on September 2, 2015. (Docs. 9, 10, 11). Respondent argues that the petition is meritless for the following reasons: (1) the district court lacks jurisdiction over this petition filed under 28 U.S.C. § 2241; (2) *Burrage* is not retroactively applicable to collateral review; (3) Petitioner procedurally defaulted the instant claim by failing to raise it in prior proceedings; and (4) the District Court also does not have jurisdiction over the petition because Petitioner cannot show that he is actually innocent given the factual basis of his guilty plea to the offense and his inability to show that it is more likely than not that no jury would have convicted him of this offense. (Doc. 11).[5]

Petitioner filed his reply on October 26, 2015, and later filed two supplements to the reply on December 9, 2015 and April 6, 2016. (Docs. 27, 28, 30).

## II. DISCUSSION

### A. Jurisdiction

A federal prisoner challenging the legality of a sentence must generally do so by motion raised in the sentencing court pursuant to 28 U.S.C. § 2255. *Harrison v. Ollison*, 519 F.3d 952, 954 (9th Cir. 2008). By contrast, a prisoner who wishes to challenge the

_____

[5] In his Supplemental Brief, Respondent also argues that Petitioner does not argue but for causation, only proximate cause. The Court disagrees. While Petitioner's arguments are somewhat convoluted, it is clear from the claims set forth in the § 2241 Petition that Petitioner is raising an issue of but for causation under *Burrage*. The Court also notes that Petitioner previously made arguments to the Eleventh Circuit and the Eastern District of California regarding proximate cause—that he was not charged with delivering heroin to the victims—but *Burrage* does not address proximate cause. To the extent that Petitioner is attempting to raise this claim again now, the Court finds that this proximate cause argument has no merit in the instant § 2241 Petition and the Court will not address it.

manner, location, or conditions of the execution of a sentence must bring a petition pursuant to 28 U.S.C. § 2241 in the custodial court. *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000). The restrictions on the availability of a § 2255 motion cannot be avoided though a petition under § 2241. *Stephens v. Herrera*, 464 F.3d 895, 897 (9th Cir. 2006).

The one exception to this general rule is what has been called the "escape hatch" or "savings clause" of § 2255. *Lorentsen v. Hood*, 223 F.3d 950, 953 (9th Cir. 2000). The escape hatch permits a federal prisoner to "file a habeas corpus petition pursuant to § 2241 to contest the legality of a sentence where his remedy under § 2255 is 'inadequate or ineffective to test the legality of his detention.'" *Stephens*, 464 F.3d at 897 (quoting *Hernandez*, 204 F.3d at 864–865). The Ninth Circuit has made clear that the ban on successive § 2255 petitions does not per se make § 2255 an inadequate or ineffective remedy for purposes of the escape hatch.[6] *Lorentsen*, 223 F.3d at 953. However, that court has held that a § 2241 petition meets the escape hatch criteria (and the ban on successive § 2255 petitions) where a petitioner: (1) makes a claim of actual innocence, and (2) has not had an unobstructed procedural shot at presenting that claim. *Alaimalo v. United States*, 645 F.3d 1042, 1047 (9th Cir. 2011).[7] These two requirements of the escape hatch are addressed in reverse order.

### 1. Unobstructed Procedural Shot to Present Claims

In determining whether a petitioner had an unobstructed procedural shot to pursue

---

[6] A petitioner can only file a successive § 2255 petition if the appropriate circuit court certifies that the successive petition is based on: (1) newly discovered evidence which would establish by clear and convincing evidence that no reasonable fact finder would have found the petitioner guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable. 28 U.S.C. § 2255(h).

[7] The Eleventh Circuit (the circuit in which Terry's conviction arose), in a very recent en banc decision, has significantly limited jurisdiction for a § 2241 petition. *See McCarthan v. Dir. Of Goodwill Industries-Suncoast, Inc.*, 851 F.3d 1076 (11th Cir. 2017). That court held that only § 2255 can be used to challenge the validity of a petitioner's "sentence," and that § 2241 is limited to challenging a petitioner's "detention," such as "his good time credits or the revocation of his parole." The court reasoned that allowing a petitioner to challenge the validity of his sentence in a § 2241 petition would essentially eliminate the bar on successive § 2255 petitions.

his claim, the court considers: (1) whether the legal basis for the petitioner's claim arose after s/he had exhausted his/her direct appeal and first § 2255 motion; and (2) whether the law has changed in any way relevant to the petitioner's claim after that first § 2255 motion. *Harrison*, 519 F.3d at 960. Once again, these two requirements are addressed in reverse order.

### a. Change in the law and the retroactivity of *Burrage*

"An intervening court decision must 'effect a material change in the applicable law' to establish unavailability." *Alaimalo*, 645 F.3d at 1047 (quoting *Harrison*, 519 F.3d at 960). By contrast, a decision that merely further clarifies the statute of conviction without materially varying the statutory construction set forth in prior case law does not effect such a change. *Id.* at 1048. There is no doubt that *Burrage* effected a material change in the law by materially varying the statutory construction set forth in prior case law regarding the "death results" enhancement in 21 U.S.C. § 841(b)(1)(C). The more difficult decision is whether that change applies retroactively to cases on collateral review.[8]

At the time that Terry was convicted of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C)—distributing heroin which resulted in the death of persons who used that substance—the law was that the drug distributed need only be a contributing cause of the victim's death. In *Burrage* the Supreme Court held that to prove a violation of § 841(b)(1)(C), the government had to prove to a jury beyond a reasonable doubt that the drug distributed was either "an independently sufficient cause of the victim's death" or the "but for" cause of death. As discussed below, *Burrage* effected a material change to substantive law because that decision narrowed the scope of § 841(b)(1)(C) by imposing the stricter requirement for the causation element of this offense. Moreover, although the Supreme Court (as usual) did not address whether *Burrage* should be applied retroactively to cases on collateral review, this material change to a substantive area of law mandates that

---

[8] Although Respondent conceded retroactivity in the Supplemental Brief, the Court will still decide this issue here as a matter of law.

*Burrage* apply retroactively to Terry's petition.

At the time Terry filed the instant § 2241 petition, several district courts had held that *Burrage* did not apply retroactively, and other district courts found no authority to support the retroactivity of *Burrage*. *See Stewart v. United States*, 2015 WL 477226 (E.D. Wis. February 5, 2015); *Alvarez v. Hastings*, 2014 WL 4385703, at *1 (S.D. Ga. Sept. 5, 2014); *De La Cruz v. Quintana*, 2014 WL 1883707, at *6 (E.D. Ky. May 1, 2014) (unable to find any authority making *Burrage* retroactively applicable); *Taylor v. Cross*, 2014 WL 1256371, at *3 (S.D. Ill. Mar. 26, 2014) (*Burrage* has not been found to apply retroactively); *Powell v. United States*, 2014 WL 5092762, at *2 (D. Conn. Oct. 10, 2014); *Gaylord v. United States*, 2015 WL 433582 (C.D. Ill. Feb. 5, 2015); *Bradley v. Copenhaver*, 2014 WL 6819542 (E.D. Cal. Feb. 2, 2014); *United States v. Snider*, 180 F. Supp. 3d 780, 792–93 (D. Or.) (noting that the Supreme Court and the Ninth Circuit have not yet decided whether *Burrage* announces a new substantive rule that applies retroactively, and that other courts disagree on whether *Burrage* applies retroactively), *appeal dismissed*, (Sept. 7, 2016); *Potts v. Matevousian*, 2015 WL 6703484, at *1 (E.D. Cal. Nov. 3, 2015) (denying permission to file a second or successive motion under 28 U.S.C. § 2255 and citing the Third Circuit's opinion denying the same because petitioner "has not made a prima facie showing that his claim under *Burrage* . . . is based on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" and noting that "*Burrage* involved an issue of statutory interpretation and did not announce a rule of constitutional law." (internal quotations and citations omitted)), *certificate of appealability denied sub nom.*, (Mar. 4, 2016). These district courts based their conclusions on the premise that *Burrage* merely addressed a sentencing enhancement and, like *Apprendi* and *Alleyne*, did not apply retroactively to cases on collateral review. *See also Dixon v. Warden of FCI Schuylkill*, 647 F. App'x 62 (3d Cir. 2016) (petitioner could not resort to § 2241 petition to raise *Burrage* claim because that decision did not decriminalize the conduct for which petitioner was convicted, but rather applied *Apprendi* and *Alleyne*).

However, fairly recently two Circuit Courts have concluded that *Burrage* effected a material change to a substantive area of the law, and therefore applies retroactively to cases on collateral review. *See Santillana v. Upton*, 846 F.3d 779, 783–784 (5th Cir. 2017) (*Burrage* is retroactive because it is a substantive decision that interprets the scope of a federal statute, and not an application of the procedural rule of *Apprendi* and *Alleyne*); *Krieger v. United States*, 842 F.3d 490, 499–500 (7th Cir. 2016) (government conceded that *Burrage* applied retroactively, but court still decided that fact as a matter of law) (but also noting in footnote 1 that a number of district courts have found that *Burrage* does not apply retroactively).[9] This Court finds the retroactivity analysis in these cases persuasive and similarly concludes that *Burrage* applies retroactively to Terry's petition.

In *Krieger*, the petitioner was initially charged under 21 U.S.C. §§ 841(a) and (b)(1)(C) with distribution of a fentanyl pain patch which resulted in the death of her friend who used the patch. 842 F.2d at 492–493. Because the government's ability to prove the "death results" enhancement faced heavy obstacles, the government obtained a superseding indictment in which the "death results" enhancement was eliminated. *Id.* at 493. The petitioner pleaded guilty to the superseding indictment charging distribution of the fentanyl patch with the specific exclusion that she was not pleading guilty to causing the death of her friend. *Id.* Although the government dropped the "death results" enhancement from the indictment—which would have required the government to prove those facts beyond a reasonable doubt—the government sought to prove the "death results" enhancement at sentencing by a preponderance of the evidence. *Id.* The district court concluded that although the government had not proved the "death results" enhancement beyond a reasonable doubt, the government had proved that enhancement by a preponderance of the evidence. *Id.* at 495. For that reason, the district court had to sentence the petitioner to the 20-year mandatory minimum sentence. *Id.*

---

[9]   In light of these recent cases, Respondent now concedes that *Burrage* applies retroactively to cases on collateral review.

At the time of the petitioner's appeal in *Krieger*, pursuant to the Supreme Court's decision in *Apprendi*, only facts that increased the statutory maximum penalty—not the mandatory minimum penalty—had to be submitted to a jury and proved beyond a reasonable doubt. *Id.* at 496. That changed when the Supreme Court decided *Alleyne* and held that facts that increase a mandatory minimum sentence also have to be submitted to the jury and proved beyond a reasonable doubt. *Id.* However, as the *Krieger* court noted, *Alleyne* did not help the petitioner because the Seventh Circuit had held that *Alleyne* is procedural and therefore cannot be applied retroactively on collateral review. *Id.* at 497.[10] After the Supreme Court decided *Burrage*, the petitioner in *Krieger* filed a § 2255 petition arguing that *Burrage* applies retroactively to cases on collateral review and required vacating her conviction. *Id.*

The Seventh Circuit first pointed out that the district courts "that have concluded that *Burrage* cannot be applied retroactively have largely relied on the fact that the Supreme Court has not so held." 842 F.2d at 499. However, the court noted that both district court and appellate courts may issue opinions "on initial petitions for collateral review holding in the first instance that a new rule is retroactive in the absence of a specific finding to that effect by the Supreme Court." *Id.* at 498. Moreover, the court concluded that to the extent that the district courts "thought that *Burrage* was just an extension of the procedural rule in *Alleyne*, they were simply incorrect." *Id.* at 499. The Seventh Circuit acknowledged that *Burrage* did reference *Alleyne* in establishing that the "death results" enhancement, which increases the mandatory minimum sentence, is an element of the offense which has to be submitted to the jury and proven beyond a reasonable doubt; however, the court found that this was a foundational issue and not *Burrage's* holding. *Id.* The court reasoned that the *Burrage* holding is not about who decides a given question or the burden of proof, but rather what must be proved—*i.e.*, "but for" causation of death. *Id.* at 499–500. Thus, the court concluded that the rule announced in *Burrage* is substantive because it "narrow[s] the scope of a criminal statute

---

[10] Similarly, *Alleyne* also does help the petitioner in the case at hand.

by interpreting its terms." *Id.* at 497 (quoting *Schriro v. Summerlin*, 542 U.S. 348, 351–52 (2004)). For that reason, the *Krieger* court held that the rule in *Burrage* applies retroactively to cases on collateral review because it creates "'a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him.'" *Id*. at 500 (quoting *Schriro*, 542 U.S. at 352).

Subsequently, the Fifth Circuit in *Santillana* also held that *Burrage* applied retroactively to the petitioner's § 2241 petition. 846 F.3d at 781. In that case, the petitioner was convicted after a jury trial of distribution of methadone which resulted in the death of a person who used that controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). *Id. Burrage* was decided after the petitioner's direct appeal and his first § 2255 petition. For those reasons, the petitioner filed a § 2241 petition arguing that *Burrage* applied retroactively to his case, and that his conviction should be vacated because there was insufficient evidence presented at trial to show that the methadone was the "but for" cause of victim's death. *Id.* The district court dismissed the petition for lack of jurisdiction, and the petitioner appealed. *Id.*

The court began by distinguishing between a § 2241 petition (and the savings clause) and a successive habeas petition filed under § 2255(h) for purposes of the retroactivity analysis. A petitioner can only file a successive § 2255 petition if the appropriate circuit court certifies that the successive petition is based on: (1) newly discovered evidence which would establish by clear and convincing evidence that no reasonable factfinder would have found the petitioner guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable. *Id.* at 782–783; *see* 28 U.S.C. § 2255(h). The *Santillana* court pointed out that the Supreme Court in *Tyler v. Cain*, 533 U.S. 656, 662–663 (2001), made clear that for purposes of a successive habeas petition under § 2255(h), the Supreme Court must have held the rule to be retroactive to cases on collateral review. *Id.* at 782. But, the Fifth Circuit concluded that the holding in *Tyler* results from the

specific statutory language set forth above for successive § 2255 petitions. *Id.* at 782–783. The Fifth Circuit reasoned that:

> [T]he retroactivity element of our savings-clause analysis [for a § 2241 petition] is not tethered to a similar statutory limitation. Our precedent requires only that a § 2241 petition be based on a 'retroactively applicable Supreme Court decision,' without specifying that the Supreme Court must have made the determination of retroactivity.

*Id.* at 783. The court pointed out that "our caselaw establishes that new [Supreme Court] decisions interpreting federal statutes that substantively define criminal offenses automatically apply retroactively." *Id.* (internal quotations omitted). The court explained that such decisions apply "retroactively because they 'necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal . . . .'" *Id.* at 782 (quoting *Schriro*, 542 U.S. at 352.) Accordingly, the court then turned to the retroactivity of *Burrage*.

The Fifth Circuit, like the Seventh Circuit in *Krieger*, held that *Burrage* is a substantive decision that interprets the scope of a federal criminal statute. *Id.* at 783. The court reasoned that *Burrage* narrows the scope of 21 U.S.C. § 841(b)(1)(C) in requiring the stricter requirement of "but for" causation. *Id.* As in *Krieger*, the Fifth Circuit concluded that the *Burrage* holding is not about who decides a given question or the standard of proof—which are the province of *Apprendi* and *Alleyne*—but rather is about what must be proved. *Id.* For that reason, the court held that *Burrage* applied retroactively to the § 2241 petition.

This Court also concludes that *Burrage* effected a material change to a substantive area of law and applies retroactively to cases on collateral review for the following reasons. As in *Santillana*, the case at hand involves a § 2241 petition, so the retroactivity element of this Court's savings-clause or escape hatch analysis is not tethered to the statutory limitation in 28 U.S.C. § 2255(h)—*i.e.*, that the Supreme Court must hold that its decision, which was based on constitutional grounds, applies retroactively to cases on collateral review. Therefore, both the district courts and/or the Ninth Circuit may issue

opinions "holding in the first instance that a new rule is retroactive [to cases on collateral review] in the absence of a specific finding to that effect by the Supreme Court." *See Krieger*, 842 F.3d at 498; *Santillana,* 846 F.3d at 783; *Bousley*, 118 S. Ct. at 1610 (decisions of Supreme Court holding that a substantive criminal statute does not reach certain conduct can be applied retroactively by lower courts on collateral review); *Schriro*, 542 U.S. at 351–52 (when a Supreme Court decision results in a "new rule," that rule applies to all criminal cases still pending on direct review; as to convictions that are final, only a new substantive rule—like one narrowing the scope of a criminal statute—applies retroactively).

Moreover, as pointed out by both the Fifth and Seventh Circuits, *Burrage* is not about who decides a sentencing enhancement (judge or jury) or the standard of proof (by a preponderance or beyond a reasonable doubt), but rather how an element of the offense is proven. Indeed, the Supreme Court in *Burrage* made clear that the offense of distributing a controlled substance that results in the death of a person who uses that substance "has two principal elements: (i) knowing or intentional distribution of heroin, and (ii) death caused by ('resulting from') the use of that drug. § 841(b)(1)(C)." 134 S. Ct. at 887. The Supreme Court then went on impose a stricter requirement to prove the second element—that the distributed drug was the "but for" cause of death, and not merely a contributing factor. *Id.* at 892; *see Schriro*, 542 U.S. at 354 ("A decision that modifies the elements of an offense is normally substantive rather than procedural."). That substantive decision narrowed the scope of 21 U.S.C. § 841(b)(1)(C), and therefore created a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him.

In conclusion, this Court concludes that *Burrage* effected a material change in the law applicable to the proof required for an element of the Petitioner's offense of conviction—*i.e.*, that Petitioner's distribution of drugs was the "but for" cause of the victims' deaths. *Burrage* expressly overruled settled law in the circuit courts regarding the proof required for the "death results" enhancement in 21 U.S.C. § 841(b)(1)(C). This

Court also concludes that this change to a substantive area of law requires *Burrage* to be applied retroactively on collateral review. For those reasons, and for the reasons that follow, the legal basis for Petitioner's actual innocence claim did not become available until *Burrage* was decided and after the Petitioner's direct appeal and his first § 2255 petition concluded.

b. The legal basis for petitioner's claim arose after direct appeal and first § 2255 petition

The government argues that Petitioner's actual innocence claim made pursuant to *Burrage* was available on direct appeal and when he filed his first § 2255 petition. This Court disagrees. The Ninth Circuit has held that "[f]or purposes of determining whether a claim was unavailable under § 2241, a court looks to whether controlling law [in the Circuit of conviction] foreclosed petitioner's argument." *Alaimalo*, 645 F.3d at 1048; *see also Stephens*, 464 F.3d at 898 (because Supreme Court's decision in *Richardson* was decided several years after the Tenth Circuit denied petitioner's first § 2255 motion, petitioner never had an unobstructed procedural shot to raise his claim). In *Alaimalo*, the court further held that "[t]he mere possibility that the [Circuit Court] would overrule its previous holdings en banc [does] not make [a petitioner's] actual innocence claim 'available' to him for the purposes of 2241." 645 F.3d at 1048. If that were the law, then "there would be a legal basis for *any* actual innocence claim that is currently foreclosed" by the law in the circuit where the conviction occurred. *Id.* (emphasis in original). The court concluded that "[r]equiring a petitioner to raise all theoretically possible actual innocence claims in his first § 2255 motion would put an unreasonable burden on petitioners and the courts." *Id.* at 1048–1049.

Here, as in *Alaimalo*, Petitioner could simply not have raised his claim of actual innocence in an effective fashion prior to *Burrage*, which was decided well after he exhausted his direct appeal and his first § 2255 motion. In fact, Petitioner did raise his claim of "but for" causation to the Middle District of Florida and the Eleventh Circuit,

but was denied relief because of settled circuit precedent.[11] Thus, prior to *Burrage*, Petitioner's argument as to "but for" causation was ineffective because it was foreclosed by controlling law. Accordingly, the undersigned concludes that Petitioner did not have an unobstructed procedural shot at presenting his actual innocence claim on appeal or in his first § 2255 motion and, for that reason, he may now raise that claim in a § 2241 petition.

### 2. Actual Innocence for Purposes of the "Escape Hatch"

"To establish actual innocence for purposes of habeas relief, a petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Alaimalo*, 645 F.3d at 1047 (internal quotations and citation omitted). The Ninth Circuit has held that "[a] petitioner is actually innocent when he was convicted for conduct not prohibited by law." *Id*. However, that court has "not yet resolved the question whether a petitioner may ever be actually innocent of a noncapital sentence for the purposes of qualifying for the escape hatch." *Marrero v. Ives*, 682 F.3d 1190, 1193 (9th Cir. 2012).

In *Marrero*, the court concluded it did not have jurisdiction of the § 2241 petition under the escape hatch because the petitioner was making a purely legal claim—that he was incorrectly treated as a career offender—"that had nothing to do with factual innocence." 682 F.3d at 1193. The court noted that "some of our sister circuits have recognized exceptions to the general rule that a petitioner cannot be actually innocent of a noncapital sentence under the escape hatch." *Id*. at 1194. Those exceptions generally fall into three categories: (1) a petitioner may be actually innocent of a sentencing enhancement, and qualify for the escape hatch, if he was factually innocent of the crime that served as the predicate conviction for the enhancement; (2) a petitioner may qualify for the escape hatch if he received a sentence for which he was statutorily ineligible; and (3) a petitioner may be actually innocent of a sentencing enhancement if the sentence

---

[11] The Court also notes that Petitioner was not afforded an evidentiary hearing to present medical testimony on the but for causation issue when he filed his first § 2255 petition because the law at the time was clear that § 841(b)(1)(C) imposed strict liability.

resulted from a constitutional violation. *Id.* at 1194–1195. The *Marrero* court did not endorse any of these exceptions recognized by other circuits because the petitioner did not claim he was factually innocent of the predicate offense, did not claim he was statutorily ineligible for the sentence he received, and did not allege a constitutional violation. *Id.* at 1195.

Here, Petitioner relies, in part, on the second exception to make his actual innocence claim. Specifically, Petitioner argues that he was statutorily ineligible for the life sentence that he received because the government could not prove the "death results" enhancement beyond a reasonable doubt. For that reason, he maintains that his statutory maximum sentence was 20 years, and the life sentence imposed was unlawful.

At the time *Marrero* was decided, many other circuit courts had held that a petitioner generally cannot assert a cognizable claim of actual innocence of a noncapital sentencing enhancement in a § 2241 petition. *See Marrero*, 682 F.3d at 1193–1194. But, several of these circuits had noted, in dicta, that if a § 2241 petition alleged that a petitioner was sentenced to a greater term of imprisonment than authorized by the statute of conviction, then the petitioner may qualify for the escape hatch based on a claim of actual innocence. *See Gilbert v. United States*, 640 F.3d 1293, 1323 (11th Cir. 2011); *Trenkler v. United States*, 536 F.3d 85, 99 (1st Cir. 2008). The Seventh Circuit and the Sixth Circuit have since explicitly held that the savings clause applies to a § 2241 petition when the petitioner is alleging that his sentence exceeded beyond that authorized by the sentencing scheme. *See Brown v. Caraway,* 719 F.3d 583 (7th Cir. 2013); *Hill v. Masters*, 836 F.3d 591 (6th Cir. 2016).

In *Brown*, the Seventh Circuit held that a petitioner may utilize the savings clause of § 2241 to challenge the misapplication of the career offender Sentencing Guideline where the petitioner was sentenced in the pre-*Booker* era when the Sentencing Guidelines were mandatory. 719 F.3d at 588. The Seventh Circuit reached that conclusion even though the petitioner's sentence did not exceed the statutory maximum for the offense of conviction. The court pointed out that the text of the savings clause focuses on the

legality of the prisoner's detention, and does not limit its scope to testing the legality of the underlying conviction. *Id.* The court reasoned that "sentences imposed pursuant to erroneous interpretations of the mandatory guidelines bear upon the legality of the petitioner's detention for purposes of the savings clause." *Id.* Thus, the court concluded that the misapplication of mandatory sentencing guidelines "represents a fundamental defect that constitutes a miscarriage of justice corrigible in a § 2241 proceeding." *Id.*

Subsequently, the Sixth Circuit in *Hill* relied on the reasoning of the Seventh Circuit in *Brown* in also holding that the savings clause of § 2241 may be utilized to challenge the misapplication of the career offender Sentencing Guideline at the time when those guidelines were mandatory. 836 F.3d at 599. In *Hill*, the Sixth Circuit noted that in *Kirk v. United States*, 481 F. App'x 249 (6th Cir. 2012) (*per curiam*), it granted a § 2255 petition where the defendant's erroneous classification as an armed career criminal resulted in a sentence that well exceeded the statutory maximum authorized for the offense of conviction. 836 F.3d at 597. The court reasoned that "[s]erving a sentence imposed under mandatory guidelines (subsequently lowered by retroactive Supreme Court precedent) shares similarities with serving a sentence imposed above the statutory maximum. Both sentences are beyond what is called for by law, and both raise a fundamental fairness issue." *Id.* at 599 (internal citation omitted).

The undersigned finds the reasoning of the Sixth and Seventh Circuits persuasive, and it should govern the actual innocence analysis for the statutory sentencing enhancement in the case at hand. In both *Brown* and *Hill*, the sentence imposed did not exceed the statutory maximum for the offense of conviction, but both courts still found that the savings clause applied to the § 2241 petition because the petitioners were actually innocent of the sentencing guideline enhancement. By contrast, here, Petitioner may well have received a sentence (life) that far exceeded the statutory maximum for the offense of conviction (20 years). *Compare Green v. Ives*, 2017 WL 1055963, at *2 (D. Or. Mar. 20) (pursuant to *Marrero*, district court found it did not have jurisdiction over § 2241 petition where petitioner "d[id] not argue that he was statutorily ineligible to receive a career

offender enhancement such that his sentence exceeded the statutory maximum."), *appeal docketed*, No. 17-35281 (9th Cir. March 31, 2017). Thus, even more so than in *Brown* and *Hill*, the possibility that Petitioner's sentence is beyond what is called for by law raises a fundamental fairness issue and a potential miscarriage of justice corrigible in a § 2241 proceeding. For these reasons, the Count finds that Petitioner has established that he may be actually innocent of the "death results" sentencing enhancement for purposes of the escape hatch.

Finally, putting aside the uncertainty in the Ninth Circuit as to whether a petitioner can ever be actually innocent of a sentencing enhancement, this Court also finds that petitioner satisfies the actual innocence prong of the escape hatch based on his claim of factual innocence and the Supreme Court's reasoning in *Burrage*. The Supreme Court made clear that the offense of distributing a controlled substance that results in the death of a person who uses that substance "has two principal elements: (i) knowing or intentional distribution of heroin, and (ii) death caused by ('resulting from') the use of that drug. § 841(b)(1)(C)." 134 S. Ct. at 887. In fact, the Supreme Court pointed out that a violation of 21 U.S.C. § 841(a)—distribution of heroin—is "a lesser included offense" of the more serious offense of distribution of a drug that resulted in death, and that it was "undisputed that [the petitioner was] guilty of that lesser included offense." *Id.* at n.3.

*Burrage* is rather unique because while it clearly involved a sentencing enhancement, that enhancement constitutes an element of a more serious offense— distribution of drugs that resulted in death. *See Santillana*, 846 F.3d at 785 (court concluded that based on the indictment and jury instruction on causation, "we cannot say that what the jury did find was criminal activity"). This situation is unlike most cases involving sentencing enhancements, *see Hill* and *Brown*, *supra,* that are part of the same offense of conviction. As in *Burrage*, the Petitioner here is clearly still guilty of distributing heroin under 21 U.S.C. § 841(a), which is a lesser included offense of 21 U.S.C. § 841(b)(1)(C). But he has alleged that he is actually innocent of the more serious offense. For that reason as well, this Court has jurisdiction over this § 2241 petition under

the escape hatch.

**B. The Merits of the Petition**

As discussed above, the undersigned has made the threshold determination that this Court has jurisdiction over Terry's § 2241 petition because he has satisfied the requirements of the escape hatch: (1) he has not had an unobstructed procedural shot to pursue his claim under *Burrage*; and (2) the sufficiency of his allegations of actual innocence. Thus, Petitioner has cleared his first significant hurdle for habeas relief. But, as discussed below, there are other hurdles that he still faces, and he can only clear those hurdles by making the requisite showing that he is actually innocent at an evidentiary hearing.

The Supreme Court has "strictly limited the circumstances under which a guilty plea may be attacked on collateral review." *Bousley*, 118 S. Ct. at 1610 ("It is well settled that a voluntary and intelligent guilty plea made by an accused, who has been advised by competent counsel, may not be collaterally attacked."). One such circumstance is a claim of actual innocence. *Id.* at 1611. As noted above, "[t]o establish actual innocence for purposes of habeas relief, a petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Alaimalo*, 645 F.3d at 1047.

The record currently before this Court does not support Terry's claim of actual innocence, which is based on the argument that the government cannot prove that the heroin he distributed was the "but for" cause of the victims' deaths. Unlike in *Burrage*, *Krieger*, and *Santillana*, the instant record does not contain testimony of doctors, coroners, or medical professionals—either at a trial or a sentencing hearing—addressing the cause of the victims' deaths in the case at hand.[12] The only evidence before the Court

---

[12] In contrast to the record in the instant case, in *Krieger*, at the sentencing hearing the petitioner called "a forensic toxicologist who testified regarding problems with evidence collection and who challenged the determination of the cause of death" and "presented evidence that the investigators and doctor performing the autopsy focused exclusively or primarily on the fentanyl evidence while ignoring evidence related to the many other drugs in [the victim's] system." The district court concluded by a preponderance of the evidence that the fentanyl was the but for cause of the victim's

as to the cause of death is the autopsy reports, which both show that the victims died of a heroin overdose. *See* Doc. 20 (autopsy reports for George Bakun and Justin Hayden, both listing the cause of death as "Acute Drug Intoxication, Heroin, due to Chronic Drug Abuse"). Although Petitioner disputes the conclusions in the autopsy reports and argues that the victims died from a combination of drugs, he has not presented evidence or pointed to facts in the record that either cast doubt on the conclusions in the autopsy

death, but found that the government would not be able to prove the cause of death beyond a reasonable doubt. 842 F.3d at 493–95. The Seventh Circuit found that "given the district court's language, we cannot say with any certainty that the district court made a finding that but for the fentanyl that Krieger supplied, [the victim] would not have died. In fact, the district court did not use the term 'but for' anywhere in the order." *Id.* at 501.

Similarly, in *Santillana*, on direct appeal the petitioner conceded that all of the medical experts concluded that methadone was at least a contributing cause of death, but argued that a stronger degree of causation was required for § 841(b)(1)(C). 846 F.3d at 781. In addressing the § 2241 petition, the Fifth Circuit noted that the indictment stated that the cause of the victim's death "was acute mixed drug intoxication. More specifically, the combination of methadone and benzodiazepine ('Xanax') in [the victim's] body caused a synergistic central nervous and respiratory depression that led to irreversible anoxic brain injury . . . ." and that the indictment made no reference to causation other than stating that the victim's use of methadone resulted in his death. *Id.* at 785. The Fifth Circuit found that:

> The district court instructed the jury that "[i]f you find the defendant guilty of distributing methadone, then you must determine if the Government has proved beyond a reasonable doubt that [the victim's] death resulted from his use of methadone distributed by the defendant." Based on the indictment and instruction, we cannot say that the jury found that methadone was a but-for cause of death. Moreover, unlike in *Christopher*, we cannot say that what the jury did find was criminal activity. It is possible that it found that methadone was merely a contributing cause of death, the exact problem in *Burrage*.

*Id.*

In *Burrage*, the court noted that the victim was a long-time drug user who died following an extended drug binge, which included injecting heroin purchased from the petitioner. 134 S. Ct. at 885. At trial, two medical experts testified that the victim had multiple drugs in his system at the time of death and that the heroin was a contributing factor, but neither expert could say whether the victim would have lived had he not taken the heroin. *Id.* at 885–86. In reversing the petitioner's sentence, the Supreme Court found that "[t]he language Congress enacted [in § 841(b)(1)(C)] requires death to 'result from' use of the unlawfully distributed drug, not from a combination of factors to which drug use merely contributed." *Id.* at 891.

reports or support his argument as to the cause of death.[13]

Nevertheless, the undersigned concludes that an evidentiary hearing is warranted because, contrary to Respondent's arguments, neither the autopsy reports nor the Petitioner's guilty plea definitively establish that heroin was the but for cause of the victims' deaths. The autopsy reports clearly show, as in *Burrage*, *Krieger*, and *Santillana*, that both victims had multiple drugs in their systems. Again, the conclusion reached in the autopsy reports is that the victims died as a result of a heroin overdose. But given the presence of other drugs noted in the autopsy reports, it is unclear from the reports if heroin was the but for cause of death. Relatedly, and importantly, neither the parties nor the trial court were focused on but for causation, given the settled law on the death results enhancement at the time of Petitioner's conviction. The same was true at the time of Petitioner's direct appeal and his first § 2255 petition. Thus, no record was developed on causation for purposes of the death results enhancement, either at sentencing or during the § 2255 proceeding. For these reasons, this Court cannot conclude that the autopsy reports definitively establish that heroin was the but for cause of death; rather, an evidentiary hearing is required to develop the record on causation.

Additionally, the record before this Court also does not support Respondent's argument that Terry admitted when he pled guilty that the heroin was the "but for" cause of the victims' deaths. During his guilty plea hearing, Terry admitted, in response to the Magistrate Judge's question, that the victims "passed on as a result of using the heroin." (Doc. 11-1 Ex. 1 at 27). That was the only questioning or statement made as to the cause of the victims' deaths. The phrase "as a result" does not establish that the heroin was an independent cause of death or the "but for" cause of death; it leaves open the possibility that the heroin was a contributing factor in the deaths, which is not legally sufficient under *Burrage*. *See Krieger*, 842 F.3d at 501 (district court used the "death resulting

---

[13] Petitioner asserts that, at sentencing, his lawyer both noted the combination of drugs referenced in the autopsy reports and disputed the reports' conclusions about the cause of the victims' deaths. But these arguments of Petitioner's attorney are not evidence as to the cause of death.

- 23 -

language" throughout its opinion and never used the term "but for" in that opinion; Seventh Circuit concluded that "we cannot say with any certainty that the district court made a finding that but for the fentanyl that [defendant] supplied, [the victim] would not have died.").

In fact, when the District Court in the Middle District of Florida denied Terry's first § 2255 petition based on his guilty plea, it cited *McIntosh's* holding that the § 841(b)(1)(C) sentencing enhancement "appl[ied] without regard to the principles of proximate cause," and was triggered "whenever death or serious injury is a consequence of the victim's use of a controlled substance." (Doc. 1-1 at 15–16). Thus, the Middle District of Florida concluded that a violation of § 841(a)(1) imposes strict liability, regardless of whether the victim's death was reasonably foreseeable, which was the law at the time. *Id.* at 16. This Court cannot similarly conclude that the phrase "as a result" is alone sufficient to establish "but for" causation as required by *Burrage*. *See Krieger, supra.*

For all of these reasons, the undersigned finds that an evidentiary hearing is required to enable Petitioner to present evidence on the cause of the victims' deaths and/or evidence that undercuts the conclusion in the autopsy reports. Likewise, Respondent is free to present evidence that supports the findings in the autopsy reports or otherwise demonstrates the requisite standard of proof on causation. If the District Court adopts the Magistrate Judge's recommendations that this Court has jurisdiction over Terry's § 2241 petition and that an evidentiary hearing is warranted, the Court should appoint counsel to represent Petitioner at that hearing.

## III.     RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order:

(1) **SUBSTITUTING** J.T. Shartle, Warden, as Respondent for "Mr. Shartle" pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and Rule 43(c)(2) of the Federal Rules of Appellate Procedure; and

(2) **FINDING** that Terry's allegations satisfy the requirements of the escape hatch and that the District Court has jurisdiction over Terry's § 2241 petition; and

(3) **FINDING** that this matter should be set for an evidentiary hearing on Petitioner's actual innocence claim and that Petitioner should be appointed counsel for the hearing.

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). No replies shall be filed unless leave is granted from the District Court. If objections are filed, the parties should use the following case number: **CV-15-107-TUC-CKJ.**

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review. The Clerk of the Court shall send a copy of this Report and Recommendation to all parties.

Dated this 23rd day of May, 2017.

Eric J. Markovich
United States Magistrate Judge